IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO.5:11-CV-424-FL

| | | |
|---|---|---|
| MICHAEL D. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| ENTERPRISE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motions to dismiss (DE # 6, 13). After the first motion was filed, plaintiff amended his complaint. Thereafter, defendant filed the second motion.[1] Plaintiff has responded in opposition, and defendant filed reply in support for the second motion. For the following reasons, defendant's first motion to dismiss is denied as moot and defendant's second motion to dismiss is denied.

## STATEMENT OF THE CASE

On June 30, 2011, plaintiff filed complaint in Wake County Superior Court alleging discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981. Plaintiff also asserted a claim for wrongful discharge under North Carolina law and a request for punitive damages. On August 10, 2011, defendant filed notice of removal to this court.

On August 17, 2011, defendant filed motion to dismiss asserting that defendant was not

---

[1] Where it appears that defendant's first motion is mooted based on the filing of the amended complaint, the first motion to dismiss is denied as moot.

plaintiff's employer and that plaintiff failed to properly serve his employer. On September 7, 2011, plaintiff filed amended complaint. On September 19, 2011, defendant filed renewed motion to dismiss on grounds of failure to state a claim upon which relief can be granted.

## STATEMENT OF THE FACTS

The facts, alleged by plaintiff in the amended complaint and accepted as true for purposes of this order, are as follows.

Plaintiff, an African American male, was employed with defendant as a management trainee beginning in September 2005. Plaintiff subsequently held the positions of management assistant and assistant manager. From approximately July 2006, until approximately February 2007, plaintiff was employed as assistant manager of defendant's branch at Capital Boulevard in Raleigh, North Carolina. During this time, plaintiff was supervised by branch manager Reid Kahler ("Kahler"). On several occasions, plaintiff alleges that Kahler told plaintiff that it was difficult for African Americans to receive promotions from defendant. Kahler also told plaintiff that there was a "good old boy" network within defendant's management in the Raleigh-Durham area.

In March 2008, plaintiff became the manager of defendant's branch in downtown Durham, North Carolina. Plaintiff was one of only three African American branch managers among the thirty-two (32) branch managers in the Raleigh-Durham area. While plaintiff served as manager of the Durham branch, plaintiff increased the profits of the branch and demonstrated outstanding performance, measured by defendant's objective criteria for measuring performance, including increased sales, customer service, and profits.

In May 2009, plaintiff told Kevin Wade ("Wade"), who was defendant's area manager, and David Villani ("Villani"), defendant's regional manager, that plaintiff was interested in applying for

2

the branch manager position for the Capital Boulevard branch in Raleigh. The Raleigh branch was high performing and would have led to increased commissions for plaintiff. Subsequently, plaintiff learned that a white male, Matt Gulliver ("Gulliver"), had been selected for the Raleigh branch manager position. Plaintiff did not apply for or interview for the position. Plaintiff contends that defendant did not follow its normal selection procedures with respect to the selection of Gulliver. Plaintiff also contends that plaintiff's branch outperformed Gulliver's in sales, customer service, and profits, in the period before Gulliver was selected as manger for the Raleigh branch.

After not being selected as the Raleigh manager, plaintiff spoke with Wade and communicated that he believed he was not selected for the position because of his race. Around this time, plaintiff communicated the same sentiment to Villani. In August 2009, plaintiff contends that Wade directed one of plaintiff's employees to closely watch plaintiff and report anything unusual to Wade. When the employee refused, he was transferred to another branch.

In October 2009, plaintiff learned of an area manager position in Charlotte, North Carolina. The position was higher than plaintiff's manager position, and would have been a promotion. Defendant's policy required that a branch manager such as plaintiff obtain his supervisor's permission to apply for an area manager position. Plaintiff requested Wade's permission to apply, which Wade refused to grant. After this incident, plaintiff spoke with Wade and Villani about his belief that he was not allowed to apply for the area manager position because of his race. Plaintiff contends that neither Wade nor Villani offered any explanation as to Wade's refusal to grant permission for plaintiff to apply.

Plaintiff later learned than a Hispanic employee was promoted to the Charlotte position. He also learned that Wade allowed two white employees, including Gulliver and an individual named

3

Alex Pollard ("Pollard"), to apply for the Charlotte position. Plaintiff contends that his branch was out-performing Gulliver's and Pollard's in sales, customer service, and profits.

After complaining that he believed he was being subject to racial discrimination, plaintiff claims his performance was subjected to greater scrutiny. Prior to plaintiff's complaints, defendant audited plaintiff's branch one to two times a year. After plaintiff lodged his complaints, he alleges defendant audited his branch one to two times per week in addition to increased "pop-up" visits from Wade.

In late October 2009, Scott Martinez ("Martinez"), defendant's finance director, informed plaintiff that plaintiff was being terminated for failing to select a personal use option with respect to a car defendant authorized plaintiff to use. Plaintiff contends that Martinez took this action because Wade[2] falsely told Martinez that plaintiff failed to select the personal use option. When Martinez realized that plaintiff had, in fact, selected the personal use option, he rescinded the termination.

Shortly thereafter, plaintiff was discharged from employment. Wade and Villani informed plaintiff that he altered the mileage in a customer's contract. Plaintiff denied and continues to deny altering the mileage, yet defendant terminated his employment. Plaintiff contends that he was performing his duties in a satisfactory manner at the time he was discharged. He also contends that his branch was one of the higher performing branches in the Raleigh-Durham area.

---

[2] Plaintiff's amended complaint says "Ward" falsely told Martinez about the personal use option incident. Considering the context of this section of the complaint, and the fact that no other individual with the surname "Ward" is described in the complaint, the court assumes that plaintiff refers to "Wade." If the individual is not Wade, however, plaintiff should so clarify.

4

## DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949, and Twombly, 550 U.S. at 557).[3]

---

[3] Defendant is correct that the standard for evaluating a motion to dismiss cited by plaintiff is not the correct one. The standard for evaluating a motion to dismiss as interpreted by North Carolina state courts is not controlling precedent for this court. The correct standard is that promulgated by the United States Supreme Court and the Fourth Circuit, as set forth above. Regardless of plaintiff's citation of the incorrect legal standard, however, plaintiff's complaint survives defendant's motion to dismiss.

5

B.  Analysis

   1.  Title VII

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests, thus a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss. Id. (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002)). Yet, the Fourth Circuit has not interpreted Swierkiecwicz as removing the burden of a plaintiff to plead facts sufficient to state all the elements of his claim. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764-65 (4th Cir. 2003).

Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman, 626 F.3d at 190 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). Title VII also prohibits employers from discriminating against their employees because the employees opposed any practice made an unlawful employment practice by Title VII. Id.; 42 U.S.C. § 2000e-3(a). The elements of a prima facie claim for retaliation under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Id.; see also Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

6

As plaintiff notes, there are two traditional approaches to analyzing employment discrimination claims. These approaches are called the "pretext" and "mixed-motive" frameworks. See Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). Under the pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), at the summary judgment stage, a plaintiff must first establish direct or circumstantial evidence of discrimination. If the plaintiff makes such a showing, the defendant must respond with evidence that it acted on a legitimate, non-discriminatory basis. If the defendant does this, the plaintiff must present evidence to prove that the defendant's articulated reason(s) were a pretext for unlawful discrimination. Id. (citing Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004)).

Alternatively, under the mixed-motive framework, a plaintiff can establish a claim of racial discrimination if he can demonstrate that, although defendant's termination decision "may have been based upon legitimate, non-discriminatory reasons, it was also at least in part motivated by racial bias on the part of a relevant decision-maker." Murray v. United Food & Comm. Workers Union, 100 F. App'x 165, 175 (4th Cir. 2004) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)).[4] In mixed-motive cases, "the employee need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, but must present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race ... was a motivating factor for the employment practice." Id. (internal citations and quotation marks omitted). It is sufficient for plaintiff to demonstrate that the termination decision was motivated by "both

---

[4] Hill set forth the two standards (mixed motive and pretext) by which a plaintiff in an employment discrimination case can "avert summary judgment." Hill, 354 F.3d at 284. While this matter is not yet at the summary judgment stage, the standard is helpful to guide the court's analysis where as here, the court finds that the facts as alleged, if true, would state a mixed motive claim as set forth in Hill, and thus dismissal is inappropriate at this time.

7

permissible and forbidden reasons." Hill, 354 F.3d at 284; Reed v. Town of Williston, 2010 WL 1409425, *12 (D.S.C. 2010).

Defendant's motion and reply do not address the fact that plaintiff proceeds under the mixed motive theory for his race discrimination claim.[5] Taking the facts as plaintiff alleges them as true, the court finds that plaintiff has stated a claim for discrimination under the mixed motive framework sufficient to withstand a motion to dismiss. Plaintiff claims another employee noted that it was difficult for African Americans to get promotions. The complaint also alleges at least two factual scenarios that, if true, would suggest that plaintiff was more qualified than other white workers for advancement based on objective criteria, yet was not allowed to apply for a higher position. Plaintiff claims that in addition to these indications of discriminatory attitudes, after complaining multiple times about his fear that he was being discriminated against because of his race, defendant attempted to terminate him on grounds later learned to be false, and months later terminated him abruptly for something he claims he did not do. Under the Hill framework, plaintiff has alleged facts that if true, would suggest that his termination was based in part on his race, or based in part on "forbidden reasons." As such, the court denies defendant's motion to dismiss plaintiff's Title VII race discrimination claim.

Plaintiff also states a claim for retaliation under Title VII. Plaintiff complained at least twice to his superiors that he believed he was not allowed to apply for manager and area manager positions because of his race. This is protected activity. See Bryant v. Aiken Regional Medical Ctr., 333 F.3d

---

[5] The court notes that if plaintiff proceeded under the pretext framework for his Title VII race discrimination claim, it would likely be subject to dismissal because the complaint does not allege that plaintiff's termination was different from the termination of others similarly situated outside of the protected class, and therefore the complaint fails to state a required element under the pretext framework. However, plaintiff's response argues that his claim for race discrimination is made under the mixed motive theory, and for the reasons stated above, plaintiff has stated a claim under this framework sufficient to survive a motion to dismiss.

8

536, 543 (4th Cir. 2003) (upholding jury verdict for retaliation against employee who complained of employer's discriminatory practices). Termination is adverse employment action. King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003). Plaintiff has also alleged facts that if taken as true, would show a causal connection between plaintiff's multiple complaints about race discrimination and his ultimate termination. After complaining for the second time about what he believed was race discrimination, Martinez tried to terminate plaintiff based on conduct that Martinez subsequently learned was not true. Shortly thereafter, plaintiff alleges he was terminated on different grounds for something he claims he did not do. Accepting these facts as true, plaintiff has stated a claim for retaliation and defendant's motion to dismiss the same is denied.[6]

2. Section 1981

Plaintiff's second claim for relief is violation of 42 U.S.C. § 1981, which prohibits race discrimination against African Americans in the making of contracts, including at will employment contracts. Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1020 (4th Cir. 1999). The statute provides that all persons within the United States shall have the same rights in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and enjoy the full and equal benefit of all laws and proceedings for the security of persons and property. 42 U.S.C. § 1981(a).

To establish a prima facie case under § 1981, the plaintiff must show (1) that he is a member of a protected class; (2) that the defendant had the intent to discriminate [against him] on the basis of race; and (3) that the discrimination interfered with his right to contract." Doyle v. South Carolina

---

[6] Defendant is correct to point out that to the extent plaintiff alleges a retaliation claim for increased "audit" activity, such claim fails. See Belton v. City of Charlotte, 175 F. App'x 641, 657 (4th Cir. 2006) (increased scrutiny at work does not sustain a Title VII retaliation claim). However, the complaint states that defendant "discharged plaintiff because of his race and in retaliation for [his comments that he believed he was being discriminated against]." (Am. Compl. ¶ 39.) As stated above, discharge from employment is an adverse employment action to constitute an element of the prima facie case for retaliation. King, 328 F.3d at 151.

9

Democratic Party, 2010 WL 6420673, *6 (D.S.C. 2010) (citing Bongam v. Action Toyota, Inc., 14 F. App'x 275, 279-80 (4th Cir. 2001)). Absent direct evidence of intentional discrimination, Title VII and § 1981 claims are analyzed under the same burden-shifting framework established in McDonnell Douglas Corp.. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n.7 (4th Cir.2002) (recognizing that the elements of a discrimination claim are the same under both Title VII and § 1981); Parish v. Siemens Medical Solutions USA, Inc., 429 F. App'x 216, 217-18 (2011).[7] Additionally, the test for establishing a claim of retaliation is the same under Title VII or § 1981. Bryant, 333 F.3d at 543; Spriggs, 242 F.3d at 190.

Application of the mixed motive framework is also proper for § 1981 claims. See Blasic v. Chugach Support Services, Inc., 673 F.Supp.2d 389, 401-402 (D. Md. 2009). In Blasic, the district court applied the mixed motive framework to the plaintiff's § 1981 claim, noting that the Fourth Circuit has applied the mixed-motive framework in non-Title VII employment discrimination contexts. Id. (citing cases). In Worden, the Fourth Circuit approved "the equivalent of a mixed-motive jury instruction in a claim under 42 U.S.C. § 1981." 549 F.3d at 342 ( citing Williams v. Fermenta Animal Health Co., 984 F.2d 261, 265 (8th Cir.1993)). With this guidance, the court finds that the mixed-motive method of analysis is available for plaintiff's § 1981 claims, and as such, plaintiff's § 1981 claim withstands defendant's motion to dismiss for the same reasons noted above as to plaintiff's Title VII claims.

---

[7] As described above, under McDonnell Douglas, at the summary judgment stage, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the employment decision. If the defendant meets this burden, the onus returns to the plaintiff to demonstrate that the reason is pretextual and that discrimination was the motivating force behind the decision. McDonnell Douglas, 411 U.S. at 802-04.

Case 5:11-cv-00424-FL Document 22 Filed 12/27/11 Page 10 of 12

The court has previously discussed why plaintiff's claims for race discrimination and retaliation under Title VII survive defendant's motion to dismiss, and that reasoning is applicable to plaintiff's § 1981 claims as well. For the reasons stated above, the court denies defendant's motion to dismiss plaintiff's § 1981 claims.

3. Wrongful Discharge

The North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, states in pertinent part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race." Although this statute does not provide a private cause of action, Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000), it does support a common law claim for wrongful discharge in violation of public policy, as is alleged here. McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720-21 (4th Cir. 2003). "Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. § 2000e *et seq.*, the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2." Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.1995). Thus, a claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises and falls with its counterpart under Title VII. For this reason, plaintiff's claim of wrongful discharge in violation of the NCEEPA will proceed. See, e.g., Sampson v. Leonard, 2011 WL 129634, *5 (E.D.N.C. 2011); Moss v. Steele Rubber Products, Inc., 2010 WL1380364, *7 (W.D.N.C. 2010). Accordingly, defendant's motion to dismiss plaintiff's wrongful discharge claim under the NCEEPA is denied.

## CONCLUSION

For the foregoing reasons, defendant's first motion to dismiss (DE # 6) is DENIED as moot. Defendant's second motion to dismiss (DE # 13) is DENIED. This case shall proceed pursuant to the schedule contemplated in the case management order.

SO ORDERED, this the 26th day of December, 2011.

LOUISE W. FLANAGAN
United States District Court Judge