IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-424-FL

| | |
|---|---|
| MICHAEL D. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| ENTERPRISE HOLDINGS, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for summary judgment (DE 38), and defendant's motion to compel (DE 34). For the following reasons, defendant's motion for summary judgment is granted. Where the court grants summary judgment for defendant on all claims, defendant's motion to compel is denied as moot.

## PROCEDURAL HISTORY

On June 30, 2011, plaintiff filed complaint in Wake County Superior Court alleging discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981. Plaintiff also asserted a claim for wrongful discharge under North Carolina law and a request for punitive damages. On August 10, 2011, defendant filed notice of removal to this court.

On September 7, 2011, plaintiff filed his amended complaint. On September 19, 2011, defendant filed renewed motion to dismiss on grounds of failure to state a claim upon which relief can be granted. In ruling on that motion, the court took note of the facts alleged by plaintiff in the

amended complaint, accepted them as true for purposes of its decision, and denied defendant's motion directed against the amended complaint.

The matter reasserts itself now on motion for summary judgment, where defendant seeks the court to dismiss all of plaintiff's claims against it. Defendant relies on affidavits of a number of individuals with knowledge of issues, including: Jill R. Trout, its human resources manager; Ben D. Collins, an area manager; Shannon Scott, another area manager of defendant; Scott A. Martinez, a regional business manager; Shannon Brown, a risk manager; Reid Kahler, an area rental manager; Kevin Wade, an area manager; David Villani, a group rental manager; Arron Richardson, a branch manager; and Thomas K. Yates, another branch manager. Numerous items of documentary evidence are entered into the record through the affiants' testimony related, among other things, to investigations of plaintiff and performance issues arising. Defendant also relies on plaintiff's sworn testimony at deposition in support of its motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The court declined in order recently entered to strike plaintiff's response to the motion for lateness, as requested. Plaintiff, then proceeding *pro se*, also was informed in writing by the clerk of court on October 30, 2012, of the consequence of defendant's motion, and provided with a copy of Rule 56(e), as it relates to the making of affidavits and that plaintiff cannot rely on mere allegations or denials in defense of the motion.

Plaintiff's detailed, unsworn response, replete with summary allegations, has been received and reviewed. Defendant's reply, filed January 31, 2013, which correctly highlight's plaintiff's incorrect references to a Rule 12(b)(6) standard, also has been received and reviewed by the court.

2

**BACKGROUND**

In prior order, the court summarized plaintiff's allegations, amplified now by plaintiff in his response to the motion for summary judgment. Plaintiff's allegations are predicated on his status as an African American male, employed with defendant, an automotive and commercial truck rental, leasing, and sales provider, as a management trainee beginning in September 2005. Plaintiff subsequently held the positions of management assistant and assistant manager. From approximately July 2006, until approximately February 2007, plaintiff was employed as assistant manager of defendant's branch at Capital Boulevard in Raleigh, North Carolina. During this time, plaintiff was supervised by branch manager Reid Kahler ("Kahler"). On several occasions, plaintiff alleges that Kahler told plaintiff that it was difficult for African Americans to receive promotions from defendant. Plaintiff further alleges that Kahler told him that there was a "good old boy" network within defendant's management in the Raleigh-Durham area.

In March 2008, plaintiff became the manager of defendant's branch in downtown Durham, North Carolina. Plaintiff was one of only three African American branch managers among the thirty-two (32) branch managers in the Raleigh-Durham area. While plaintiff served as manager of the Durham branch, plaintiff also alleges that he increased the profits of the branch and demonstrated outstanding performance, measured by defendant's objective criteria for measuring performance, including increased sales, customer service, and profits.

In May 2009, plaintiff alleges that he told Kevin Wade ("Wade"), who was defendant's area manager, and David Villani ("Villani"), defendant's regional manager, that plaintiff was interested in applying for the branch manager position for the Capital Boulevard branch in Raleigh. The Raleigh branch was high performing and would have led to increased commissions for plaintiff.

3

Subsequently, plaintiff learned that a white male, Matt Gulliver ("Gulliver"), had been selected for the Raleigh branch manager position. Plaintiff did not apply for or interview for the position. Plaintiff contends that defendant did not follow its normal selection procedures with respect to the selection of Gulliver. Plaintiff also contends that plaintiff's branch outperformed Gulliver's in sales, customer service, and profits, in the period before Gulliver was selected as manger for the Raleigh branch.

After not being selected as the Raleigh manager, plaintiff alleges that he spoke with Wade and communicated that he believed he was not selected for the position because of his race. Around this time, plaintiff communicated the same sentiment to Villani. In August 2009, plaintiff contends that Wade directed one of plaintiff's employees to closely watch plaintiff and report anything unusual to Wade. When the employee refused, he was transferred to another branch.

In October 2009, plaintiff learned of an area manager position in Charlotte, North Carolina. The position was higher than plaintiff's manager position, and would have been a promotion. Defendant's policy required that a branch manager such as plaintiff obtain his supervisor's permission to apply for an area manager position. Plaintiff requested Wade's permission to apply, which Wade refused to grant. After this incident, plaintiff alleges that he spoke with Wade and Villani about his belief that he was not allowed to apply for the area manager position because of his race. Plaintiff contends that neither Wade nor Villani offered any explanation as to Wade's refusal to grant permission for plaintiff to apply.

Plaintiff later learned than an Hispanic employee was promoted to the Charlotte position. He also learned that Wade allowed two white employees, including Gulliver and an individual named Alex Pollard ("Pollard"), to apply for the Charlotte position. Plaintiff contends that his

4

branch was out-performing Gulliver's and Pollard's in sales, customer service, and profits.

After complaining that he believed he was being subject to racial discrimination, plaintiff claims his performance was subjected to greater scrutiny. Prior to plaintiff's complaints, defendant audited plaintiff's branch one to two times a year. After plaintiff lodged his complaints, he alleges defendant audited his branch one to two times per week in addition to increased "pop-up" visits from Wade.

Plaintiff claims that in late October 2009, Scott Martinez ("Martinez"), defendant's regional business manager, informed plaintiff that plaintiff was being terminated for misuse of a gas card. Plaintiff contends that Martinez took this action based on misinformation from Wade, and he rescinded the termination upon receiving correct information from plaintiff.

Shortly thereafter, plaintiff was discharged from employment. Wade and Villani informed plaintiff that he altered the mileage in a customer's contract. Plaintiff denied and continues to deny altering the mileage, yet defendant terminated his employment. Plaintiff contends that he was performing his duties in a satisfactory manner at the time he was discharged. He also contends that his branch was one of the higher performing branches in the Raleigh-Durham area.

The thrust of defendant's motion, and the facts offered into evidence, would show that his termination was not the result of discrimination or retaliation; rather, that plaintiff was terminated from employment with defendant because of insubordination. Defendant relies on a host of affidavits of record, and plaintiff's own testimony at deposition, in support of its Rule 56 motion. As noted also by defendant, plaintiff's offers no support for his allegations in response to the motion save a few scant references to references to evidence, some of which is not in the record. Mainly, he reiterates and builds upon his allegations in his unsworn response, with reference to Rule 12 of

5

the Federal Rules of Civil Procedure.

Defendant's evidence would tend to show that it prohibits discrimination and promotes diversity, and that it engages in employee training regarding business practices, and employee discipline. Defendant offers testimony concerning its employee assessment and promotions processes, also with reference to plaintiff's evolution at the company.

Through the testimony, defendant highlights not only plaintiff's rapid rise, but also the serious challenges he presented, with regard to organization skills, tardiness, and work time management. There is evidence of a warning as early as 2008, for poor underwriting, and failure to make customer deposits and customer callbacks. Defendant shows through the testimony of record that plaintiff had a well-known habit of making rentals to unqualified persons. Later in 2008, when plaintiff received a new area manager upon his business move, thirty (30) areas were noted in the October evaluation in which plaintiff required improvement. Plaintiff received a written warning that year for cell phone misconduct, to which he pleaded confusion, need to maintain his employment, and willingness to repay the company. In spring of 2009, he received a generally satisfactory review, though several performance areas were noted as still requiring improvement.

Later in 2009, defendant underwent a reorganization in the region at issue, resulting in several employee reassignments, during which time plaintiff complained of discrimination. Plaintiff was urged to improve his performance. However, the evidence shows after being coached on the need to improve, to be eligible for promotions, he performance markedly declined. On October 9, 2009, plaintiff received a written warning about his tardiness and leaving early from the job. Plaintiff's documented job performance included misuse of his employee gas card. Plaintiff claimed misunderstanding also about the gas card policy, despite his status then as branch manager, which

6

entailed his having been trained on the policy, as well as the responsibility to enforce the policy.

In October 2009, another performance review issued. Again, while general satisfaction was noted in the context of his "meet[ing] expectations," he again required improvement in several areas. One of those areas was attendance. Two weeks after that evaluation, plaintiff received his final warning for tardiness and leaving early. Again, management representatives met with plaintiff and discussed need for improvements.

The next month, in November 2009, plaintiff's risky rental practices came to the surface in the form of notice that a car rented from his branch had been impounded. A number of established practices were either misapplied or not applied, resulting in specific instructions to plaintiff which he did not follow in their entirety. Plaintiff was terminated for insubordination and possibly unethical behavior, with regard to his manipulation of mileage records. Plaintiff's position was filled by two African-American individuals, working in succession.

The court turns to the motion for summary judgment below.

## COURT'S DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met

7

its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49.

B.  Analysis

  1.  Title VII

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

There are two traditional approaches to analyzing employment discrimination claims. These approaches are called the "pretext" and "mixed-motive" frameworks. See Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). Under the pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), at the summary judgment stage, a plaintiff must first establish a *prima facie* case of discrimination. Absent direct evidence, the elements of a

8

*prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman, 626 F.3d at 190 (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). If the plaintiff makes such a showing, the defendant must respond with evidence that it acted on a legitimate, non-discriminatory basis. If the defendant does this, the plaintiff must present evidence to prove that the defendant's articulated reason(s) were a pretext for unlawful discrimination. Worden, 549 F.3d at 341 (citing Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004)).

Alternatively, under the mixed-motive framework, a plaintiff can establish a claim of racial discrimination if he can demonstrate that, although defendant's termination decision "may have been based upon legitimate, non-discriminatory reasons, it was also at least in part motivated by racial bias on the part of a relevant decision-maker." Murray v. United Food & Comm. Workers Union, 100 F. App'x 165, 175 (4th Cir. 2004) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)). Hill set forth the two standards (mixed-motive and pretext) by which a plaintiff in an employment discrimination case can "avert summary judgment." Hill, 354 F.3d at 284.

On motion to dismiss, the court found that the facts as alleged, if true, would state a mixed-motive claim as set forth in Hill, and thus dismissal at that time was inappropriate. The decision now is to be made pursuant to Rule 56, however. As noted previously, in mixed-motive cases, "the employee need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, but must present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . was a motivating factor for the employment practice." Id. (internal

9

citations and quotation marks omitted). It is sufficient for plaintiff to demonstrate that the termination decision was motivated by "both permissible and forbidden reasons." Hill, 354 F.3d at 284; Reed v. Town of Williston, 2010 WL 1409425, *12 (D.S.C. 2010).

Defendant's motion to dismiss did not address the fact that plaintiff proceeds under the mixed-motive theory for his race discrimination claim.[1] In the instant motion for summary judgment, defendant argues that plaintiff lacks sufficient evidence to rely on the mixed-motive framework at summary judgment where he has presented no direct evidence of discrimination. The Supreme Court, however, has specifically held that "direct evidence of discrimination is not required in mixed-motive cases." Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-02, 123 (2003). Thus a lack of direct evidence is, by itself, no impediment.

Plaintiff attempts to establish his claim with unsupported allegations and speculations. He asserts another employee noted that it was difficult for African Americans to get promotions. Plaintiff alleges several factual scenarios that would suggest that plaintiff was more qualified than other white workers for advancement based on objective criteria, yet was not allowed to apply for a higher position. Plaintiff claims that in addition to these indications of discriminatory attitudes, after complaining multiple times about his fear that he was being discriminated against because of his race, defendant attempted to terminate him on grounds later learned to be false, and months later terminated him abruptly for something he claims he did not do.

A plaintiff may not simply rest on its allegations to stave off summary judgment. Fed. R.

---

[1] As the court noted in order denying the motion to dismiss, if plaintiff had proceeded under the pretext framework for his Title VII race discrimination claim, it likely would be subject to dismissal because the complaint does not allege that plaintiff's termination was different from the termination of others similarly situated outside of the protected class, and therefore the complaint fails to state a required element under the pretext framework. Similarly, plaintiff cannot establish a *prima facie* case for discrimination where he was not replaced by someone outside of his protected class. Rather, his position was filled first by Jarian Manning, and then by Steven Fisher, both of whom are African Americans. Def.'s Ex. A, Trout Aff. ¶ 55.

10

Civ. P. 56(e); Anderson, 477 U.S. at 256. Rather, plaintiff must point to specific facts, that admissible in evidence at trial, which would allow a rationale trier of fact to find in his favor. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" ); Anderson, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (emphasis added). Where plaintiff has only presented his allegations, he has not presented "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . was a motivating factor" for his termination. Hill, 354 F.3d at 284.

The uncontroverted evidence of record shows that plaintiff's termination was not based in part on his race, or based in part on "forbidden reasons." Plaintiff's termination was a result of insubordination after multiple written warnings for misconduct. Defendant has produced written warnings plaintiff received for (1) his branch having excessively high bad debt, see Def.'s Ex. Q, Oct. 31, 2008, Warning; (2) violation of defendant's business practices by holding rental contracts open past 2:00 p.m., see Def.'s Ex. R, Aug. 20, 2008, Warning; (3) misuse of his branch cell phone, see Def.'s Ex. S, Oct. 17, 2008 Warning; and (4) tardiness, see Def.'s Ex. Z, Oct. 9, 2009, Warning; Def.'s Ex. DD Nov. 17, 2009, Warning. Defendant has further produced affidavits showing that plaintiff's termination was based on insubordination and possibly unethical behavior. See Def.'s Ex. J, Brown Aff. ¶¶ 15-31; Def.'s Ex. V, Wade Aff. ¶¶ 62-63. Thus defendant has shown it is entitled to summary judgment on plaintiff's Title VII race discrimination claim.

Plaintiff also claims retaliation under Title VII. Title VII prohibits employers from

11

discriminating against their employees because the employees opposed any practice made an unlawful employment practice by Title VII. Id.; 42 U.S.C. § 2000e-3(a). "In order to establish a *prima facie* case of retaliation, a plaintiff must prove three elements: (1) that [plaintiff] engaged in a protected activity; (2) that [plaintiff's] employer took an adverse employment action against [plaintiff]; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). If a plaintiff establishes such a *prima facie* case, "the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action." Id. at 405. "If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext." Id.

Plaintiff complained at least twice to his superiors that he believed he was not allowed to apply for manager and area manager positions because of his race. This is protected activity. See Bryant v. Aiken Regional Medical Ctr., 333 F.3d 536, 543 (4th Cir. 2003) (upholding jury verdict for retaliation against employee who complained of employer's discriminatory practices). Termination is adverse employment action. King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).[2]

Defendant has also failed to show there is no genuine issue of material fact with respect to

---

[2] Plaintiff also asserts the following other actions by defendant were retaliatory: increased monitoring by Wade, Martinez's visit to discuss plaintiff's misuse of plaintiff's gas card, and defendant holding an increased number of diversity workshops. The court previously ordered that to the extent plaintiff alleges a retaliation claim for increased supervision, such claim fails. See Belton v. City of Charlotte, 175 F. App'x 641, 657 (4th Cir. 2006) (increased scrutiny at work does not sustain a Title VII retaliation claim). With respect Martinez's visit and the diversity workshops, these are also not adverse actions. An action is adverse only if it is "materially adverse," meaning that it could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Where plaintiff himself testified he wanted the "minority meetings" to take place, they were not adverse. See Def.'s Ex. F., Campbell Dep. 293-295. Similarly, where Martinez's visit ended in no disciplinary action being taken, it was also not a materially adverse action. Moreover, there is no evidence Martinez knew of any discrimination complaint by plaintiff. See Shields v. Fed. Exp. Corp., 120 F. App'x 956, 962 (4th Cir. 2005) ("A plaintiff claiming retaliation must establish that the employer had knowledge of the protected activity in order for its subsequent adverse employment actions to be retaliatory.").

12

a causal link between plaintiff's complaints and his termination. A plaintiff can rely solely on temporal proximity to establish a *prima facie* causal connection between the protected activity and the adverse employment action if the two were "very close" in time. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). In this case, plaintiff has testified that he last complained to Wade and Villani that he was not allowed to apply for an Area Manager position in Charlotte in October 2009 because of his race. Def.'s Ex. F, Campbell Dep. 253, 261. Plaintiff was terminated on or about December 10, 2009. Def.'s Ex. I, Martinez Aff. ¶ 30. This very close temporal proximity is sufficient to establish a *prima facie* causal link. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (concluding that a ten week gap between protected activity and termination "weaken[ed] significantly the inference of causation between the two events" but not enough to render the *prima facie* claim unsuccessful).

Defendant has, however, articulated a legitimate, non-retaliatory justification for the adverse employment action where it has produced evidence that plaintiff was terminated for insubordination. Thus, plaintiff has the burden of proving the proffered reasons for his termination are pretext. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Plaintiff has produced no evidence whatsoever tending to show defendant's proffered explanation is pretexual. Accordingly, plaintiff's retaliation claim fails as a matter of law.

2. Section 1981

Plaintiff also claims defendant violated 42 U.S.C. § 1981, which prohibits race discrimination against African Americans in the making of contracts, including at will employment contracts. Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1020 (4th Cir. 1999). Absent direct evidence of intentional discrimination, Title VII and § 1981 claims are analyzed under the same

13

burden-shifting framework established in McDonnell Douglas Corp.. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n. 7 (4th Cir. 2002) (recognizing that the elements of a discrimination claim are the same under both Title VII and § 1981); Parish v. Siemens Medical Solutions USA, Inc., 429 F. App'x 216, 217-18 (2011).[3] Additionally, the test for establishing a claim of retaliation is the same under Title VII or § 1981. Bryant, 333 F.3d at 543; Spriggs, 242 F.3d at 190.

Application of the mixed-motive framework is also proper for § 1981 claims. See Blasic v. Chugach Support Services, Inc., 673 F.Supp.2d 389, 401-402 (D. Md. 2009). In Blasic, the district court applied the mixed-motive framework to the plaintiff's § 1981 claim, noting that the Fourth Circuit has applied the mixed-motive framework in non-Title VII employment discrimination contexts. Id. (citing cases). In Worden, the Fourth Circuit approved "the equivalent of a mixed-motive jury instruction in a claim under 42 U.S.C. § 1981." 549 F.3d at 342 (citing Williams v. Fermenta Animal Health Co., 984 F.2d 261, 265 (8th Cir. 1993)).

Where the standard of proof for causes of action pursuant to Title VII and section 1981 is the same, and where defendant is entitled to summary judgment on plaintiff's Title VII claims, summary judgment is also appropriate for defendant on plaintiff's section 1981 claims.

3.  Wrongful Discharge

The North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, states in pertinent part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or

---

[3] As described above, under McDonnell Douglas, at the summary judgment stage, once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the employment decision. If the defendant meets this burden, the onus returns to the plaintiff to demonstrate that the reason is pretextual and that discrimination was the motivating force behind the decision. McDonnell Douglas, 411 U.S. at 802–04.

14

abridgement on account of race." Although this statute does not provide a private cause of action, Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000), it does support a common law claim for wrongful discharge in violation of public policy. McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720-21 (4th Cir. 2003). "Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. § 2000e *et seq.*, the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2." Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.1995). Thus, a claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises and falls with its counterpart under Title VII. For this reason, plaintiff's claim of wrongful discharge in violation of the NCEEPA fails as a matter of law. See Moss v. Steele Rubber Products, Inc., 2010 WL1380364, *7 (W.D.N.C. 2010). Accordingly, defendant's motion for summary judgment with respect to plaintiff's wrongful discharge claim under the NCEEPA is granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE 38) is GRANTED. Defendant's motion to compel (DE 34) is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 16th day of September, 2013.

LOUISE W. FLANAGAN
United States District Court Judge

15

Case 5:11-cv-00424-FL   Document 50   Filed 09/16/13   Page 15 of 15